IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN F. QUIRIN, Special Representative of the Estate of RONALD J. QUIRIN, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-CV-2633 |
| CRANE CO., et al. | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS LORILLARD TOBACCO COMPANY AND
HOLLINGSWORTH & VOSE COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY AND
OPINIONS OF DR. JAMES MILLETTE REGARDING CERTAIN
<u>REPORTS AND/OR ANALYSIS INVOLVING ORIGINAL KENT CIGARETTES</u>**

Defendants Lorillard Tobacco Company ("Lorillard") and Hollingsworth & Vose ("H&V"), for their Memorandum of Law in support of their motion to exclude the testimony and opinions of Dr. James Millette, state as follows:

Experiments and analysis involving original Kent filter cigarettes conducted by Dr. James Millette and his laboratory, MVA Scientific Consultants, should be excluded, along with evidence of machine smoking procedures of the cigarettes performed at Arista Laboratories at Dr. Millette's request, and any analysis of those procedures by Dr. Millette and Dr. Millette's attempts to quantify the results. The Court should also preclude any expert witnesses from testifying about, commenting on, or otherwise relying upon this evidence.

**I. INTRODUCTION AND STATEMENT OF FACTS**

In this product liability action, Plaintiff alleges that decedent Ronald Quirin was exposed to various asbestos-containing products manufactured and/or supplied by several companies

during the course of his employment. Plaintiff also alleges that Mr. Quirin smoked original Kent cigarettes between 1954 and 1956 when an asbestos-containing filter material was used by P. Lorillard Company, a predecessor of Lorillard Tobacco Company ("Lorillard"). The material incorporated into the cigarette filter was sold to P. Lorillard by H&V Specialties Company, Inc., a predecessor of Hollingsworth & Vose Company ("H&V"). Plaintiff alleges that Kent cigarettes released asbestos when Mr. Quirin smoked them and were, therefore, a substantial factor in causing Mr. Quirin's mesothelioma.

Plaintiff has disclosed Dr. James Millette as an expert witness in this case. Dr. Millette is an environmental scientist and microscopist who has tested asbestos-containing products for fiber release. Dr. Millette has been involved with recent procedures and analyses on original Kent filter cigarettes -- cigarettes that were more than a half-century old when these procedures and analyses were performed.

Up until a few years ago, Dr. Millette had never actually smoked a cigarette for analytical purposes. *See* Dep. of James R. Millette, Ph.D., *Stevens v. Ford Motor co. et al.*, Case No. 11-CA-002766, Thirteenth Judicial Circuit, Hillsborough County, Florida, Oct. 27, 2011, 17:2-14 ("*Stevens* Dep.," relevant portions attached as Exhibit A). However, in 2010, Dr. Millette obtained two packages of original Kent filter cigarettes, purportedly manufactured in 1955 and 1956, from plaintiffs' counsel in another case involving original Kents who had, in turn, obtained them from an individual in Winchester, Virginia. *See* Report of Results: MVA8472, Analysis of Two Packages of Kent Micronite Cigarettes, dated Aug. 3, 2010 ("MVA I," attached as Exhibit B). Dr. Millette knew nothing of the history of these decades-old samples or the conditions in which the cigarettes had been stored for the past 54 or 55 years. *See* Dep. of James R. Millette, *Quirin v. Crane Co., et al.*, Case No. 12 L 005290, Circuit Court of Cook County, Illinois, Dec.

11, 2012, 92:15-93:4 ("*Quirin* Dep.," relevant portions attached as Exhibit C). Over the course of the next two years, the following occurred:

- In August 2010, Dr. Millette examined the filters of one cigarette from each package and determined that the filters contained 20-40% crocidolite asbestos by volume. *See* Ex. B, MVA I.

- Dr. Millette then sent the opened packages of cigarettes to Arista Laboratories ("Arista") so they could be "smoked" on an automated smoking machine using a "client provided protocol" to determine the total particulate matter (TPM) in the mainstream smoke. *See* Test Report: The Determination of Selected Analytes in Mainstream Smoke Under ISO and CINT Smoking Conditions, dated Sept. 14, 2010, pp. 3-4 and App. A ("Arista Report," attached as Exhibit D).

- Following the machine-smoking at Arista, the samples and air filter pads (made of glass fibers) used during the machine-smoking, were returned to Dr. Millette at his laboratory, MVA, where Dr. Millette analyzed a one-eighth piece of each filter pad in an effort to identify and quantify any asbestos fibers found on the pads. *Id.*; *and see* Report of Results: MVA8472, Analysis of Air Filters Kent Micronite Cigarettes, dated Sept. 30, 2010 ("MVA II," attached as Exhibit E).

- In September 2011, Dr. Millette examined another original Kent cigarette filter, and this time determined that the filter contained 10-20% crocidolite asbestos by volume -- half of what he had determined in his 2010 examination. *See* Report of Results: MVA8472, Analysis of a Kent Micronite Cigarette, dated October 12, 2010 ("MVA III," attached as Exhibit F).[1]

- In 2012, Dr. Millette sought to assess whether one of the components of the original Kent filter -- crepe paper -- had undergone any degradation since the manufacture of the cigarettes in 1955 and 1956. Using a tweezers to pluck at the crepe paper, and relying on a visual examination, Dr. Millette claims that he observed no degradation. *See* Report of Results: MVA8472, Examination of the Crepe Paper in a Kent Micronite Filter, dated Sept. 27, 2012 ("MVA IV," attached as Exhibit G).

- Finally, Dr. Millette re-analyzed larger pieces of the glass filter pads in an effort to find asbestos fibers where he previously found none, but his efforts were unsuccessful. He has been unable to find asbestos fibers in these samples. *See* Dep. of James R. Millette, *Couscouris, et al. v. Hatch Grinding Wheels, Inc., et al.*, Case No. BC 475835, Superior Court of California, Los Angeles County, Aug. 31, 2012, at 150:13-151:25 ("*Couscouris* Dep.," relevant portions attached as Exhibit H).

---

[1] The cigarette examined in 2011 came from another pack of original Kent cigarettes that Dr. Millette obtained from a plaintiffs' law firm. This pack was purportedly manufactured in 1953. *See* Ex. F, MVA III.

3

Dr. Millette's work is characterized by untested methodologies, inconsistent results, and unsupported conclusions. When he initially examined Kent cigarette filters to determine asbestos content, for example, he concluded that the filters contained 20-40% crocidolite asbestos by volume. *See* Ex. B, MVA I. When he examined another Kent cigarette filter later, he concluded that it contained only 10-20% of crocidolite asbestos by volume. *See* Ex. F, MVA III. Dr. Millette has no explanation for this disparity other than to speculate that it might be attributable to "inconsistency" in the manufacture of original Kent filter cigarettes. *See* Ex. C, *Quirin* Dep., at 96:24-98:18.

The machine-smoking at Arista is even more problematic. Neither Dr. Millette nor any of his representatives was directly involved in or present for those procedures, and Dr. Millette would have to "defer to someone from Arista to talk about what they did and whether [his] interpretation of the ISO method is correct or not." *See* Ex. C, *Quirin* Dep., at 118:20-120:1; 140:23-142:12. In addition, Dr. Millette was not involved in the creation of the "client-provided protocol" that Arista purportedly used to smoke the cigarettes. *Id.* at 140:23-141:17.

What is known, however, is that the nearly 60-year-old cigarettes that Millette provided to Arista and Arista machine smoked were not preserved according to the established protocol, ISO 3402, which requires that samples kept for more than three months be frozen. *Id.* at 144:10-145:22; *see also* Tobacco and Tobacco Products - Atmosphere for Conditioning and Testing (ISO 3402) (attached as Exhibit I). Dr. Millette admits that he did not freeze the cigarettes while they were in his control. *Id.* There is no evidence the 60-year-old cigarettes were ever frozen according to ISO preservation protocols. In fact, Dr. Millette has no idea how the cigarettes had been stored prior to his receipt of them and cannot say whether the samples were properly conditioned for smoking by Arista. *Id.* at 145:17-146:9. Arista noted only that the Kent

4

cigarette packages delivered to them were "previously opened" and "stored at ambient conditions until required for testing." *See* Ex. D, Arista Report, at pp. 3-4 and App. 2. There is also no indication that the humidification equilibrium of the 60-year old cigarettes was ever tested by Arista to ensure that whatever "re-humidification" efforts they made actually worked. In short, it is impossible for Arista or Dr. Millette to testify that the 60-year-old cigarettes were re-conditioned in accordance with ISO standards prior to testing.

Furthermore, the glass filter pads that Arista used were designed for the collection of organic materials released from the cigarette and were not designed for particle analysis. *See* Ex. E, MVA II, at p. 4. So, Dr. Millette applied a novel and aggressive technique to dissolve a one-eighth piece removed from each smoking machine filter pad by repeatedly boiling the pieces in acid to dissolve the majority of glass fibers and prepare the remaining residue for microscopic analysis and quantification. *Id.* at p. 2. Dr. Millette admitted that the acid-base digestion was his idea, and he used that technique because, under scanning electron microscopy (SEM) and transmission electron microscopy (TEM), it is difficult to distinguish small fibers such as crocidolite asbestos fibers from glass fibers, so he attempted to eliminate as many of the glass fibers as he could. *See* Ex. H, *Couscouris* Dep., at 57:16-24; 94:14-19; 95:4-7.

Of the eight air filter pad residue samples Dr. Millette analyzed, he found crocidolite asbestos fibers in four and no crocidolite asbestos in the remaining four. *See* Ex. E, MVA II, at p. 3. And of the four air filter pad residue samples where asbestos fibers were found, the amount of fibers discovered varied from 8 to 56 fibers per sample, according to Dr. Millette's analysis. *Id.* Dr. Millette then performed calculations by which he converted these results and reported estimated fibers per original Kent cigarette filter in a range that varied tremendously -- from 38,646 to 10,820,923. *Id.*

5

62357348_1

For the four residue samples in which Dr. Millette found no asbestos fibers, he went back and collected additional pieces of the samples in order to see if he could identify any asbestos fibers. Despite examining approximately three-quarters of the available samples, Dr. Millette has been unable to identify any asbestos. *See* Ex. H, *Couscouris* Dep., at 150:13-151:25. Tellingly, Dr. Millette has admitted that if he could do these tests over again, he would do things differently and use different types of filters "to get a fuller picture of this particular question." *Id.* at 112:15-24. Dr. Millette's candid admission reveals the shortcomings of his methodology.

Dr. Millette's testimony and any evidence of his work with original Kent cigarettes, including the machine-smoking performed by Arista on which much of Dr. Millette's work is based, should be excluded because it is little more than a series of questionable methods leading to equally questionable conclusions. Put another way, Plaintiff cannot prove that Dr. Millette's testimony meets the threshold for the admissibility of expert testimony under the Federal Rules of Evidence.

Further, Plaintiff cannot demonstrate that the Kent cigarettes Dr. Millette examined and Arista machine-smoked were in a condition substantially similar to the fresh Kent cigarettes that Mr. Quirin allegedly smoked in the 1950s. There is no reliable and useful information regarding the condition of the original Kent cigarettes on which Dr. Millette and MVA experimented, including their origin, conditions in which they were maintained since the 1950s, changes in condition over time, and the manner in which they were handled. To the extent there is any available information, it shows that the cigarettes were not preserved and maintained according to documented standards for testing and analyzing fresh cigarettes. It is therefore impossible for Dr. Millette to opine that the 60-year old cigarettes were representative of fresh Kent cigarettes

6

from the 1950's. For this reason alone, Dr. Millette's testimony and opinions pertaining to original Kent filter cigarettes should be excluded.

## II. ARGUMENT

### A. Dr. Millette's Conclusions Regarding the Arista Procedures Do Not Meet the Reliability Requirements of Federal Rule of Evidence 702 or the *Daubert* Analysis.

Admissibility of expert opinion is governed by Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court held that Rule 702 established the trial court's "gatekeeping function," which requires a court to ensure that: (1) the evidence or testimony is relevant, i.e., there is a proper "fit" between the testimony and the issue to be resolved at trial; and (2) "the reasoning or methodology underlying [an expert's] testimony is scientifically valid." *Daubert*, 509 U.S. at 591-93. Principally, expert testimony must be reliable. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In order to prevent unreliable opinions from confusing the jury, the trial judge must act as a "gatekeeper" and undertake a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593-94. This requirement applies to all expert opinion testimony, not just scientific testimony. *Kumho*, 526 U.S. at 147; *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (holding that an

opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist). Expert testimony is inadmissible when "there is simply too great an analytical gap between the data and the opinion offered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Therefore, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 **mandate** the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (emphasis added); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (noting that "a district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used").

There is simply no way that the reliability of Arista's machine-smoking procedures can be established through Dr. Millette's testimony. Dr. Millette, by his own admission, does not know any detail regarding the machine-smoking conducted by Arista, except to say that he thought Arista used the ISO protocol. *See* Ex. C, *Quirin* Dep., at 117:12-18. Dr. Millette had never worked with Arista prior to this particular work involving original Kent cigarettes, and neither he nor any of his representatives was present when Arista conducted the smoking procedures. *Id.* at 117:7-11; 119:19-120:1. Nor was Dr. Millette involved with developing a work plan or template for Arista's work. *Id.* at 140:23-141:1. When asked specific questions about the ISO protocol purportedly followed by Arista, Dr. Millette admits that he "would certainly defer to someone from Arista to talk about exactly what they did and whether my interpretation of the ISO method is correct or not." *Id.* at 119:3-6. Unfortunately, however, no one from Arista will be testifying in this matter to fill in the gaps in Dr. Millette's knowledge and testimony.

Compelling proof that Arista's smoking machine work and Dr. Millette's analysis of the air filter pads from the smoking machine are not generally accepted in the relevant field is Dr. Millette's admission that if he could do his work in this case all over, he would do things differently:

> Q. … In hindsight if you had to do this again would you use something other than a Cambridge filter pad?
>
> A. I think that if I could I would use several different types of filters to see or to get a fuller picture of this particular question. I think we get data from this and then I understand that others have tested it in other ways. I think together that data tells us more than just the one particular study.

*See* Ex. H, *Couscouris* Dep., at 112:15-24. Additional proof of the infirmities of the Arista procedures and Dr. Millette's analysis is found in that fact that Dr. Millette actually found **no** evidence of asbestos fiber release in four of the eight samples he obtained from Arista, despite repeated testing of those samples. *See id.* at 150:13-151:25.

Plaintiff does not intend to call anyone directly or indirectly involved with Arista's smoking procedures as a witness in this case. Instead, Plaintiff hopes to put Arista's work before the jury without having to worry about its validity or reliability and then compound that failure by having Dr. Millette testify about the conclusions he reached from his experiments on pieces of the air filter pads obtained from Arista as a result of the machine-smoking. Certainly, Dr. Millette cannot testify as to the reliability of the procedures performed by Arista when he does not know how the techniques deviated from the standard protocols that would ordinarily be applied. Additionally, where Dr. Millette is aware of the ISO protocol, he knows that neither he nor Arista followed the protocol.

Dr. Millette's methods in attempting to determine the amount of crocidolite in the original Kent filters are equally suspect. The inconsistency of Dr. Millette's disparate conclusions undermine their usefulness to the jury. And Dr. Millette's crepe paper "analysis"

9

employed not a shred of science to conclude that, after almost 60 years, crepe paper -- an organic material -- showed no evidence of degradation. The only support for Dr. Millette's conclusion on this point is his own opinion. "Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999). Further, "[a]n expert must 'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless." *Id.* at 757; *see also Meyers v. Nat'l R.R. Passenger Corp.*, 648 F. Supp. 2d 1032, 1043 (N.D. Ill. 2009) (excluding expert's opinions where they were "not sufficiently reliable since they lack an essential link between the conclusions that were reached and the methodology on which such conclusions were purportedly based"), *aff'd*, 619 F.3d 729 (7th Cir. 2010).

Dr. Millette's testimony, his reports, and the Arista report do not meet the standards for expert testimony under Rule 702 or *Daubert*, and they should not be permitted in this case.

**B. Evidence Regarding Dr. Millette's Work, Including Arista's Procedures, Is Inadmissible Because Plaintiff Cannot Prove that the Nearly 60-Year-Old Cigarettes Used in the Experiments Were in a Condition Substantially Similar to Their Original Condition.**

Evidence of out-of-court experiments is not admissible unless there is a substantial similarity between the conditions existing at the time of the occurrence complained of and when the experiments are made. *See Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004) ("Because this type of evidence can be quite persuasive, in order to avoid unfair prejudice, the conditions under which an experiment is performed must be "substantially similar" to those surrounding the simulated event."); *see also Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1278 (7th Cir. 1988) ("As a general rule, the proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under conditions that were similar to those that existed at the time of the accident.") The rule is the

10

same under Illinois law. Thus, experiments are incompetent as evidence where they do not duplicate the essential conditions existing at the time of the accident which gave rise to the litigation. *Ford v. City of Chicago*, 132 Ill. App. 3d 408, 416, 476 N.E.2d 1232, 1239 (1st Dist. 1985). Further, "if a test is represented to be a reenactment of the occurrence at issue, it would be necessary to show that the test was performed under conditions that duplicate, as closely as possible, the conditions at the time of the occurrence." *Rios v. Navistar Int'l Transp. Corp.*, 200 Ill. App. 3d 526, 533, 558 N.E.2d 252, 257 (1st Dist. 1990).

Here, Dr. Millette has no knowledge about how the cigarettes Arista smoked were stored over the 55 years or so prior to when they were sent to Arista. *See* Ex. C, *Quirin* Dep., at 92:15-93:4. He cannot even say how it was determined that the cigarettes Arista smoked were, in fact, original Kent cigarettes from 1955 and 1956, as he assumed. *Id.* at 93:5-94:3. What is known is that the cigarettes were not stored in accordance with ISO protocol. Further, the cigarettes were not tested for equilibrium to ensure that any of Arista's re-humidification efforts actually worked. Therefore, there is no way for Arista or Dr. Millette to verify that the cigarettes tested were in any way similar to fresh Kent cigarettes from the 1950's.

Dr. Millette believes that the components of the original Kent filter would not have degraded over time, but his only basis for this is his own subjective opinion. With regard to the crepe paper, for example, Dr. Millette does not know whether the crepe paper in the 60-year-old cigarettes has the same physical characteristics as the crepe paper in original Kent cigarettes in the 1950s. *Id.* at 41:12-42:11. He states that he saw "no evidence of degradation," but the only degradation he was concerned with was the presence of mold or brittleness. *Id.* at 42:23-46:22. Changes in the color of the material and evidence of shrinkage or loss of moisture were disregarded. *Id.* Although there are published protocols for the testing of crepe paper, Dr.

11

Millette employed only a visual examination and used tweezers to pull on the crepe paper, but Dr. Millette did not measure any other characteristics, such as tensile strength, basis weight, or relative humidity. *Id.* at 153:21-154:6. Because he did not consider these elements individually, it is not possible that Dr. Millette determined what cumulative impact these features may have had on the testing and his results. On the other hand, Dr. Millette does know that the very old cigarettes were not preserved in the manner described in the established protocols for cigarette samples kept longer than three months.

As for the cellulose acetate, Dr. Millette agrees that cellulose acetate fibers degrade over time, but he "would not expect them to degrade in normal conditions over time to any appreciable amount; maybe under some very severe conditions they might change." *Id.* at 101:10-102:15. Cotton fibers are subject to the same type of degradation as cellulose acetate, according to Dr. Millette, and under the same conditions. *Id.* at 103:3-13. Of course, as he admits, he has no knowledge about the conditions in which the cigarettes smoked by Arista were stored over the decades. *Id.* at 101:10-102:15. For example, a photograph of one of the original cigarette packages from which the examined and smoked cigarettes were obtained revealed a distinct depression or deformity in the package. Dr. Millette had no idea as to what might have caused that damage. *Id.* at 154:7-19. In short, there can be no reasonable assurance that the cigarettes examined by Dr. Millette and smoked at Arista were substantially similar to those smoked in the 1950s, and analysis of smoke residue from those cigarettes some five to six decades later does not reveal anything about whether they may have released asbestos when smoked in the 1950s. It is impossible for Dr. Millette to do anything other than compare other like-aged Kent cigarettes against one another because the original Kent cigarettes have not been manufactured for over 55 years.

12

Someone with actual knowledge of the appearance of original Kent filter cigarettes in the 1950s is Richard Orcutt, who was employed by Lorillard for 42 years. *See* Deposition of Richard H. Orcutt, *Quirin v. Crane Co., et al.*, Case No. 12 L 005290, Circuit Court of Cook County, Illinois, February 7, 2013, 29:14-23 (relevant portions attached as Exhibit J). Mr. Orcutt began his career at Lorillard in February 1953 as a sales representative for original Kents and other Lorillard brands. *Id.* Mr. Orcutt would take great exception to Dr. Millette's finding "no evidence of degradation" in the Kent cigarettes he looked at more than five decades after they were manufactured. As Mr. Orcutt stated succinctly after viewing photographs of the cigarettes Dr. Millette examined, "They do not accurately represent the product that would be made available to the consumer in that ['53 to '56] time frame." *Id.* at 137:10-16. Moreover, when Mr. Orcutt was asked what would have happened in the 1950s if he had encountered original Kent cigarettes and cigarette packages in the condition of those Dr. Millette examined, Mr. Orcutt testified that they would have been "removed from the marketplace" and "returned to the factory" as "totally not representative of a fresh Kent or fresh product." *Id.* at 147:3-14.

Mr. Orcutt's testimony reminds us of what Dr. Millette would have us forget: Ronald Quirin did not smoke Kent cigarettes that were more than 55 years old in the 1950s. When seen in that light, any comparison with the work that Dr. Millette and Arista did involving these ancient cigarettes is simply irrelevant, and it should be excluded at trial.

  C. **Plaintiffs' Expert Witnesses Cannot Serve As the Conduit for Placing Inadmissible Evidence Before the Jury.**

Plaintiff may argue that the documents or materials from Arista's machine-smoking are admissible because their expert witnesses, including Dr. Millette, relied upon them as the basis for their opinions. Dr. Millette, of course, did more than simply "rely" on Arista's machine-smoking, Dr. Millette actually took a one-eighth piece of each of the air filter pads provided by

13

62357348_1

Arista and put them through an aggressive acid-base boiling process to eliminate glass fibers in the pad material and then analyzed the residue for asbestos fibers. Without any assurance that Arista's work was sound, however, Dr. Millette's experiments and calculations are meaningless. This is evident from the broad range of data that Dr. Millette found -- from no fibers detected to approximately 10 million fibers per filter -- which itself calls into the question the reliability of his analysis.

Further, Plaintiff cannot "backdoor" inadmissible evidence simply by having her experts attempt to testify regarding the work of Arista and Dr. Millette because they claim it was the basis for their opinions. Under the Federal Rules of Evidence, an expert's opinion testimony is limited to opinions that are "perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703. And expert witnesses cannot base their opinions on inadmissible facts or data unless such facts or data are reasonably relied on by experts in the field. *Id.* Although an expert may be permitted to explain the facts underlying his opinion, that does not mean he can serve as the "mouthpiece" of a scientist in a different specialty. *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 809 (N.D. Ill. 2005) ("[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science."), quoting *Dura Automotive Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (Posner, J.) As the United States Court of Appeals for the Seventh Circuit has explained a number of times, "the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence." *Matter of James Wilson Assoc.*, 965 F.2d at 173, citing *Gong v. Hirsch*, 913 F.2d 1269, 1272-73 (7th Cir. 1990). Moreover, "it is improper to use an expert witness as a screen against cross-examination." *Id.*

14

Under the guise of his expertise, Dr. Millette should not be permitted to propagate unreliable smoking lab work performed by Arista and then use that work as the basis upon which to extrapolate his own calculations. To permit other experts to rely upon Dr. Millette's questionable conclusions, however, would create yet another layer of unreliability and render any such expert opinions wholly inadmissible under Rule 703. It would be just as improper to allow other experts to parrot Dr. Millette's opinions regarding the amount of asbestos Dr. Millette supposedly observed in the original Kent filter when even Dr. Millette cannot settle on a consistent estimate. Finally, Dr. Millette's examination of the crepe paper in a cigarette filter that was close to 60 years old and his bald conclusion that the crepe paper had not degraded at all simply defies logic. Plaintiff cannot carry her burden to demonstrate that Dr. Millette's work, Arista's work, or any of the resulting analyses and conclusions represent the type of evidence upon which any expert would reasonably rely.

### III. CONCLUSION

For the foregoing reasons, Lorillard and H&V respectfully move this Court for an order excluding the testimony of Dr. James Millette and any evidence regarding analysis of and experiments on original Kent filter cigarettes by Dr. Millette, including any of the work done by Arista Laboratories, and precluding any expert witnesses, from testifying about, commenting on, or otherwise relying upon this evidence.

Respectfully submitted,

LORILLARD TOBACCO COMPANY &
HOLLINGSWORTH & VOSE COMPANY

By: /s/ Kevin C. McGinley
        One of their Attorneys

Kurt E. Reitz, #6187793
Kevin C. McGinley #6286841
THOMPSON COBURN LLP
525 West Main Street
P.O. Box 750
Belleville, Illinois 62222-0750
(618) 277-4700
FAX (618) 236-3434

**Certificate Of Service**

    I hereby certify that on _____, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kevin C. McGinley

16