UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN F. QUIRIN, Special Representative of the Estate of RONALD J. QUIRIN, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, et al., <br><br> Defendants. | Judge Joan B. Gottschall <br><br> Case No. 13 C 2633 |

## MEMORANDUM OPINION & ORDER

Plaintiff Marilyn F. Quirin, special representative of the estate of Ronald J. Quirin ("Quirin"), has sued defendants Lorillard Tobacco Company ("Lorillard") and Hollingsworth & Vose Company ("H&V") on a negligence theory, alleging that Mr. Quirin developed and died from mesothelioma substantially caused by his exposure to asbestos-containing materials while smoking Kent cigarettes. Now before the court is Lorillard and H&V's motion for summary judgment. Lorillard and H&V argue that Quirin cannot establish that Mr. Quirin was exposed to any product they manufactured or sold that contained asbestos. They further argue that Quirin cannot establish that such exposure was a substantial factor causing his disease. Because genuine disputes of fact exist as to whether Mr. Quirin was exposed to Kent cigarettes that contained asbestos, and as to whether that exposure was sufficient to be a substantial factor causing his mesothelioma, the motion is denied.[1]

---

[1] The court previously dismissed Count III of the complaint, a claim for loss of consortium. (*See* Order Aug. 15, 2013, ECF No. 160.) The court recognized, however, that loss of consortium is a compensable "pecuniary injury" under the Wrongful Death Act. *See Glenn v. Johnson*, 764 N.E.2d 47, 52 (Ill. 2002).

# I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

# II. FACTS

Mr. Quirin was diagnosed with mesothelioma on or about December 27, 2011. In 2012, Mr. Quirin and his wife, Marilyn, filed a complaint against numerous defendants in the Circuit Court of Cook County, alleging claims for injuries caused by asbestos exposure. Mr. Quirin passed away on March 31, 2013, and Mrs. Quirin was appointed his executor. The case was removed to federal court on diversity grounds in April 2013, and Plaintiff's Fifth Amended Complaint was filed in this court on April 26, 2013. The defendants that remain in the case are Crane Co., Georgia-Pacific LLC, Hollingsworth & Vose Co., and Lorillard Tobacco Co. Against each defendant, Quirin brings negligence claims under Illinois' Wrongful Death Act and the Illinois Survival Act. Quirin alleges that the defendants failed to exercise ordinary care and caution in various ways, such as by including asbestos in their products, marketing and distributing products containing asbestos, failing to provide warnings to people working around

the products, and failing to provide instructions as to safe methods for working with asbestos-containing products.

Lorillard and H&V have moved for summary judgment on Quirin's negligence claims. For purposes of the motion, the court takes the following facts from the parties' Local Rule 56.1 Statements of Facts ("SOFs"), to the extent that they are supported by admissible evidence and relevant to issues raised in the motion.

From March 1952 to May 1956, Lorillard's business predecessor, P. Lorillard Tobacco Company, manufactured Kent cigarettes with a "Micronite" filter made of cellulose acetate, cotton, crepe paper, and crocidolite asbestos (hereinafter, "original Kents"). From March 1952 until May 1956, H&V's predecessor, H&V Specialties Co., Inc., manufactured bulk filter media containing asbestos for P. Lorillard Tobacco Company. After May 1956, Kent cigarettes were no longer manufactured with a filter containing asbestos.

Mr. Quirin enlisted in the Navy in approximately September 1953, upon graduating from high school. After completing his basic training, Mr. Quirin was assigned to the *USS Tolovana*, a fleet tanker based in Long Beach, California. He joined the *Tolovana* in May 1954. In Mr. Quirin's Answers to Interrogatories, served on June 5, 2012, Mr. Quirin indicated that he began smoking Kent cigarettes shortly after joining the Navy and continued to smoke them until the early 1960s. Mr. Quirin's evidence deposition was taken on July 16, 2012.[2] Mr. Quirin testified at deposition, "For a short period after I joined the *Tolovana* I was smoking Kent cigarettes." (Pl.'s SOF Ex. A (Quirin Dep.) 41:2-3.) He testified that he believed he began smoking Kent

---

[2] Illinois, unlike other jurisdictions, provides for two types of depositions—discovery and evidence depositions. Evidence depositions may be introduced at trial in certain circumstances. The Federal Rules of Evidence, however, do not recognize this distinction. Whether the deposition of an unavailable witness may be used at trial is governed by Federal Rule of Civil Procedure 32.

cigarettes "[i]n 1954," and that he began smoking Kents "within probably a month, two months" after joining the *Tolovana*. On cross-examination, Mr. Quirin again testified that he first started smoking Kents aboard the *Tolovana*. (Defs.' SOF Ex. E (Quirin Dep.) 161:10-13.) He testified that he started smoking Kents in 1954 or 1955. (*Id.* 161:18-21.) He testified that he could not recall the specific month that he began smoking Kents and that it "[c]ould have been '55." (*Id.* at 162:12-15.)

Mr. Quirin testified that he smoked "[p]robably a pack every two to three days." (Pl.'s SOF Ex. A (Quirin Dep.) 43:1-2.) At his June 26, 2012, deposition, Mr. Quirin testified that when he first started smoking Kents, he smoked "maybe five to seven" cigarettes per day, and that during his service he smoked "possibly a pack every three days." (Def.'s Resp. to Pl.'s SOF Ex A. (Quirin Dep. June 26, 2012) 127:4; 213:14.)

Mr. Quirin testified that he continued to smoke Kent cigarettes until after he left the *Tolovana* in 1957. (Pl.'s SOF Ex. A (Quirin Dep.) 43:17-23.) He testified that he could not remember the specific year that he stopped smoking Kents, but that it was shortly after he got out of the Navy in 1957. (Defs.' SOF Ex. E (Quirin Dep.) 162:16-20.)

In 2010, materials scientist Dr. James Millette measured the number of asbestos fibers that were released onto filter pads when four original Kent cigarettes were smoked using a smoking machine. He testified that he found crocidolite asbestos fibers in some of the samples. (Pl.'s SOF Ex. D (Millette Dep.) 14-25.) He testified that "it's my opinion that Mr. Quirin would have exposure from Kent cigarettes based on the tests that we did showing that fibers are released from Kent cigarettes during the smoking tests." (*Id.* 242:4-8.) He stated that the

number of fibers found on the filter pads differed, from no fibers found to "comparably high" numbers, depending on the procedure used to machine-smoke the cigarettes. (*Id.* 242:9-19.)[3]

Quirin retained Dr. Carl Brodkin to provide expert causation opinions in this matter. With the exception of Dr. Brodkin, none of Quirin's retained experts have provided a medical causation opinion regarding Mr. Quirin's alleged asbestos exposure through Kent cigarettes and his diagnosis of mesothelioma. Dr. Brodkin summarized his opinions regarding the causes of Mr. Quirin's mesothelioma as follows:

> It's my opinion that [Mr. Quirin's mesothelioma] is causally related to various occupational exposures that he encountered in the course of his naval service, as well as subsequent career as a telephone installer and supervisor with additional environmental exposure to the Kent micronite cigarettes between 1954 to mid 1956 to a high degree of medical certainty.

Pl.'s SOF Ex. E (Brodkin Dep. 33:9-15.)

Dr. Brodkin testified that he had reviewed a July 2012 study by Dr. William Longo, analyzing sixty-year-old Kent cigarettes smoked on a smoking machine. He also reviewed Dr. Millette's September 30, 2010, report on his analysis of original Kent cigarettes. Dr. Brodkin concluded that if Mr. Quirin smoked approximately five to seven Kent cigarettes per day during part of the period between mid-1954 and mid-1956, "that would be a significant exposure to crocidolite." (Pl.'s SOF Ex E (Brodkin Dep.) 228:25.) Dr. Brodkin testified that he did not know whether Mr. Quirin's alleged exposure to asbestos through smoking Kent cigarettes was in and of itself sufficient to cause his mesothelioma. Dr. Brodkin testified, "Mesothelioma is a dose response disease. It's the aggregate dose that increases risk and causes disease." (Defs.' SOF Ex. F (Brodkin Dep.) 239:15-17.) He continued,

---

[3] Quirin's SOF ¶ 9 states that "Dr. Milette found an average asbestos fiber count among these for filter pads of almost 4,000,000 per pad," but the exhibit cited does not support this statement. The court will rely only upon what the exhibit cited and provided by Quirin in connection with its Rule 56.1 SOFs actually says.

> Q    So is it your opinion that Mr. Quirin's alleged Kent cigarette smoking in and of itself would not have been sufficient to cause his mesothelioma?
>
> A    I can't say that one way or another. I don't think medical science has a way of addressing that question. Mr. Quirin's exposure to asbestos smoking the Kent micronite filters between 1954 and 1956 in my opinion is a significant exposure. I've identified it as a component part of his exposure. That exposure is not as great as the cumulative exposure he had including all occupational exposures.
>
> So the exposure to Kent micronite did increase his mesothelioma, but it's the aggregate of his exposure in the environmental as well as the occupational setting that resulted in his total risk and caused his mesothelioma.
>
> So I have no way of parsing out a single component, whether it be Kent micronite or some other component.

(Defs.' SOF Ex. F (Brodkin Dep.) 239:13-240:10.)

Dr. Brodkin testified that if Mr. Quirin had not smoked Kent cigarettes, his occupational exposure to asbestos alone could have been sufficient to cause mesothelioma. Quirin has alleged that Mr. Quirin was exposed to asbestos while he served in the Navy from 1953 to 1957. Through his work in the Navy and his subsequent work for Illinois Bell Telephone Company, Quirin alleges that Mr. Quirin was "exposed to and inhaled asbestos fibers emanating from certain asbestos-containing products . . . that were manufactured, sold, distributed, supplied and/or installed" by the defendants. (Fifth Am. Compl. ¶¶ 11-12, ECF No. 41.)

### III. ANALYSIS

**A. Motions to Bar Expert Testimony**

As an initial matter, Lorillard and H&V have moved to bar the testimony of Dr. Millette and Dr. Brodkin pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Quirin relies on the testimony of Drs. Millette and Brodkin in opposing the motion for summary judgment. The parties have briefed the *Daubert* issues, and the court has determined in a separate *Daubert* opinion that the evidence cited by Quirin in

opposition to the motion for summary judgment is admissible. The court will therefore consider the evidence when ruling on the motion. *See Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir.1997) ("[A]t the junction where *Daubert* intersects with summary judgment practice, *Daubert* is accessible, but courts must be cautious . . . not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility.").

## B. Exposure to Original Kent Cigarettes

Lorillard and H&V argue that Quirin has presented insufficient evidence that Mr. Quirin ever used a product containing asbestos that was manufactured, sold, or distributed by Lorillard and H&V. Kent cigarettes were produced with Micronite filters containing asbestos only between March 1952 and May 1956. Lorillard and H&V argue that Quirin has not presented evidence demonstrating that Mr. Quirin smoked original Kent cigarettes before May 1956, when production of the cigarettes was discontinued.

The court disagrees. A reasonable jury could conclude that Mr. Quirin smoked original Kent cigarettes with Micronite filters. Mr. Quirin joined the *Tolovana* in May 1954. He testified that he began smoking Kent cigarettes after joining the *Tolovana* and that he believed it was in 1954, within a month or two of joining the ship. On cross-examination, Mr. Quirin testified that he could not recall the specific month that he began smoking Kent cigarettes and stated that it could have been in 1955. Mr. Quirin testified that he continued to smoke cigarettes until after he left the *Tolovana* in 1957. Based on this testimony, a jury could conclude that Mr. Quirin smoked original Kents with an asbestos-containing filter as early as June or July of 1954, and that he continued smoking them until they were discontinued in 1956.

7

**C. Causation**

Lorillard and H&V further argue that even if Quirin can prove that Mr. Quirin smoked original Kent cigarettes, Quirin cannot establish a causal link between the original Kents and his mesothelioma. The defendants are correct that Quirin must present evidence that the asbestos in the original Kents was a "cause in fact" of Mr. Quirin's injury. *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 455 (Ill. 1992). In Illinois, however, a plaintiff does not need to establish that a particular exposure to asbestos was the "but for" cause of his mesothelioma, but may instead establish that it was a "substantial factor" causing the disease. *Id.* The Illinois Supreme Court has adopted the "frequency, regularity and proximity" test as a means by which an asbestos plaintiff can establish that a particular product was a substantial factor causing an injury. *Id.* at 455-57. *Cf. Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 729-30 (Va. 2013) (acknowledging that the "'substantial contributing factor' has become prominent" but rejecting it under Virginia law in favor of a standard that "exposure to the defendant's product alone must have been *sufficient to have caused the harm*") (italics in original).

*Thacker* explained that the "frequency, regularity and proximity" test strikes a balance between the difficulty of proving causation in an asbestos case and the defendant's right not to be held liable based on mere "guesswork." *Id.* at 457. A plaintiff's argument that a particular exposure to asbestos constituted a substantial factor in his illness cannot be purely conclusory. *Nolan v. Weil-McLain*, 910 N.E.2d 549, 558 (Ill. 2009) ("[P]roof which relies on conjecture, speculation or guesswork is insufficient."). In other words, the court cannot "permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005). Under Illinois law, an asbestos plaintiff must "prove more than minimum contact to

establish that a specific defendant's product was a substantial factor in being a cause in fact of a plaintiff's injury." *Nolan*, 910 N.E.2d at 558.

*Thacker* also acknowledged, however, that in cases like the one at hand, "plaintiffs . . . have had to rely heavily on circumstantial evidence in order to show causation." *Id.* at 456. In this case, there is no evidence in the record indicating the dose of asbestos Mr. Quirin actually received by smoking original Kent cigarettes. But that does not doom Quirin's claim. Evidence of a particular dose is not required to satisfy the substantial factor test. *Zickuhr v. Ericsson, Inc.*, 962 N.E.2d 974, 987 (Ill. App. Ct. 2011) ("Illinois courts have not required a finding of the exact quantity of asbestos fibers a decedent was exposed to."). There is a difference, moreover, between pointing to a minor exposure to asbestos and claiming causation in a conclusory fashion and identifying, through use of expert testimony, a significant and sustained exposure in the plaintiff's history. As a Hawaii district court recently explained:

> [E]vidence that [the plaintiff] was exposed to asbestos from a particular Defendant's product, combined with expert testimony that such exposure is sufficient to contribute to asbestos-related diseases, is sufficient to raise a genuine issue of material fact that the product was a substantial factor in causing [the plaintiff's] injuries.

*Cabasug v. Crane Co.*, No. 12-00313 JMS/BMK, 2013 WL 6212151, at *20 (D. Haw. Nov. 26, 2013) (applying maritime law). The *Cabasug* court rejected the idea "that Plaintiffs must come forward with direct evidence establishing some magic number of exposures to survive summary judgment," and it noted that *Lindstrom*, one of the few appellate court decisions dealing with causation in the context of asbestos litigation, "does not define what substantial, as opposed to minimal, exposure means." *Id.*

Here, Quirin has presented enough evidence to create a material dispute of fact as to whether Mr. Quirin experienced sufficient exposure to asbestos through his use of original Kents

to constitute a substantial factor causing his mesothelioma.  Under Illinois law, Quirin has the burden to demonstrate the "frequency, regularity and proximity" of the exposure.  Mr. Quirin's testimony that he smoked "maybe five to seven" cigarettes per day during that time period creates a question of fact as to whether the potential exposure was frequent and regular.  Through Dr. Millette's testimony, Quirin has presented evidence that asbestos fibers may have been released from the original Kents.  That satisfies the proximity requirement, as it is evidence that Mr. Quirin may have ingested the asbestos fibers contained in the original Kents.  Dr. Brodkin's testimony also supports Quirin's argument that Mr. Quirin's use of Kent cigarettes was a proximate cause of his mesothelioma.  As previously stated, the court has ruled that Dr. Brodkin's opinion is admissible under Rule 702 and *Daubert*.

Lorillard and H&V argue that the record demonstrates that Mr. Quirin also experienced significant occupational exposures to asbestos during his naval service and work for Illinois Bell and that this demonstrates that his exposure to asbestos through smoking original Kents was insufficient to constitute a substantial factor contributing to his mesothelioma.  They point out that even Dr. Brodkin testified that he could not say with certainty whether the Kent cigarettes in and of themselves could have caused Mr. Quirin's mesothelioma, nor could he say whether Mr. Quirin's occupational exposure would have been enough to cause the disease even without his history of smoking.

This argument conflates the substantial factor test used in Illinois with the "but for" test, when it is in fact an alternative to that test.  Under Illinois law, Quirin does not have to show that exposure to asbestos resulting from the original Kents was sufficient in and of itself to cause Mr. Quirin's mesothelioma.  *Cf. Boomer*, 736 S.E.2d at 729-30.  To survive summary judgment,

Quirin must show only that a reasonable jury could find that the use of the product contributed to the disease. The court concludes that he has made that showing.

## IV. Conclusion

For the reasons explained above, Lorillard and H&V's motion for summary judgment is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 26, 2014