# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARILYN F. QUIRIN, Special Representative of the Estate of RONALD J. QUIRIN, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, et al., <br><br> Defendants. | Judge Joan B. Gottschall <br><br> Case No. 13 C 2633 |

## MEMORANDUM OPINION & ORDER

Plaintiff Marilyn F. Quirin, special representative of the estate of Ronald J. Quirin ("Quirin"), has sued defendant Georgia-Pacific LLC on a negligence theory, alleging that Mr. Quirin's mesothelioma was caused by his exposure to asbestos while working as a telephone installer and supervisor. Quirin claims that, between 1957 and 1977, Mr. Quirin worked near drywall installers who used Georgia-Pacific's drywall joint compound, which contained chrysotile asbestos. Now before the court is Georgia Pacific's motion to exclude expert testimony and argument that "each and every exposure" to asbestos was a cause of Mr. Quirin's mesothelioma. The court concludes that the expert testimony in question is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and denies the motion.

### I. LEGAL STANDARD

Under Rule 702, an expert witness, "qualified . . . by knowledge, skill, experience, training, or education," may testify if: "(a) the expert's scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

A trial judge has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "To do so, the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed. R. Evid. 702). The court must also determine if an expert is offering legal conclusions, as "experts cannot make those." *See United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008).

"The reliability of the expert's principles and methods can be examined by looking at factors such as (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 593-94). The Seventh Circuit has explained that the judge's concern "is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion: the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). If the expert's principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**II. GEORGIA-PACIFIC'S MOTION TO EXCLUDE "EACH AND EVERY EXPOSURE" TESTIMONY**

Georgia Pacific moves the court to preclude Plaintiff's experts Dr. Carl Brodkin and Dr. Arnold Brody from testifying that "each and every exposure" to chrysotile fibers from Georgia Pacific joint compound was a substantial contributing factor causing Mr. Quirin's disease, and to preclude Quirin's counsel from making an argument to that effect.

As an initial matter, Quirin represents that Dr. Brody will offer no specific causation testimony at trial, and further states that Dr. Brody will not espouse the theory that all exposures to asbestos, regardless of dose or fiber type, are causative. Based on this representation, the court denies Georgia-Pacific's motion as moot with respect to Dr. Brody.

With respect to Dr. Brodkin's testimony, the court previously concluded that similar testimony by Dr. Brodkin, regarding the relationship between a source of asbestos exposure and Mr. Quirin's mesothelioma, was admissible against defendants Lorillard Tobacco Company and Hollingsworth & Vose Company. (*See* Order Feb. 25, 2014, ECF No. 238.) The court will repeat much of the analysis in that order here.

First, the court acknowledges that testimony that "each and every exposure" to asbestos is a substantial factor causing mesothelioma has been rejected by numerous federal and state courts as unscientific and unsubstantiated by evidence. *See, e.g.*, *Lindstrom v. A-C Prods. Liab. Trust*, 424 F.3d 488, 492-93 (6th Cir. 2005); *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *1-3 (D. Utah Jan. 18, 2014); *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 56-57 (Pa. 2012) ("[W]e do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact

3

issue concerning substantial-factor causation[.]"). Other courts, however, have deemed similar testimony scientifically valid. *See, e.g.*, *In re Asbestos Prods. Liab. Litig.*, MDL No. 875, No. 10-cv-61118, 2011 WL 605801, at *7 (E.D. Pa. Feb. 16, 2011) (allowing opinion that "every occupational and bystander exposure to asbestos above background was a substantial contributing factor in causing . . . mesothelioma"). Still other courts have distinguished testimony suggesting that a *de minimus* exposure to asbestos could cause mesothelioma from testimony that each *significant* exposure to asbestos could be a cause. *See, e.g.*, *Dixon v. Ford Motor Co.*, No. 82, 70 A.3d 328 (Md. App. Ct. July 25, 2013) (explaining that expert's "opinion was based on evidence of repeated exposures . . . to high-level doses of asbestos fibers . . . and must be viewed in that light").

As the court stated in its February 25, 2014, order, however, for purposes of this motion, it need not decide whether an expert may offer testimony that each and every exposure to asbestos is a significant cause of mesothelioma, because that is not Dr. Brodkin's opinion. Quirin represents that Dr. Brodkin will not espouse the theory that *all* exposures to asbestos, regardless of dose, are causative. In his depositions in this and other cases, Dr. Brodkin has explicitly rejected a "single fiber" theory of causation and the idea any minimal exposure to asbestos fibers is a cause of mesothelioma. His opinion is that only "significant exposures" to asbestos should be considered causes of mesothelioma.

In reaching the conclusion that Mr. Quirin experienced a "significant exposure" to asbestos contained in products manufactured or supplied by Georgia-Pacific, Dr. Brodkin considered that Mr. Quirin worked as a telephone installer for nine years, from 1957 to 1966. (Pl.'s Expert Reports Attach. 5 (Brodkin Report) Ex. 1 (Med. Evaluation Report) 18.) During that time, he performed "hands-on" installation of telephone services, such as running internal

telephone wires in walls. (*Id.*) He continued to work on job sites as a supervisor from 1967 to 1986. (*Id.* at 19.) While installing telephone lines and supervising such installation, he sometimes worked in proximity to other tradespersons, including drywallers, on construction sites. (*Id.* at 20.) Mr. Quirin recalled that "many times" he observed drywallers mixing joint compound, sanding drywall seams, and sweeping dust. (*Id.* at 24.) He recalled that US Gypsum and Georgia-Pacific were the dominant brand names he observed on job sites. (*Id.* at 25.) Based on this history, Dr. Brodkin concluded that Mr. Quirin experienced significant bystander exposure to drywall joint compound between 1957 and 1977, when asbestos was largely removed from drywall joint compounds. (*Id*. at 24.) Dr. Brodkin described this as twenty years of "cumulative exposure." (*Id.* at 51.) He stated during his deposition that Mr. Quirin's exposure was less than the workers who directly used joint compound, but that bystander exposure could be "significant," depending on its duration and the distance to the material containing asbestos. (Pl.'s Expert Reports Attach. 5 (Brodkin Report) Ex. 5 (Brodkin Dep.) 67:19-21.)

Based on a careful reading of Dr. Brodkin's report, the court concludes that Dr. Brodkin's opinion is not that any minimal exposure to asbestos fibers is a cause of mesothelioma, but that Mr. Quirin's regular exposure to drywall joint compound over a twenty-year period should be considered a "significant" exposure that contributed to his mesothelioma. A district court in Washington recently allowed Dr. Brodkin to offer the opinion that each "identified exposure" was a substantial cause of injury. *Lipson v. On Marine Servs. Co.*, No. C1301747 TSZ, 2013 WL 6536923, at *43 (W.D. Wash. Dec. 13, 2013) ("The Court is satisfied that Dr. Brodkin's opinions are based on a sound methodology and are not simply unreliable

opinions equivalent to 'every fiber in disguise.'"). This court finds that Dr. Brodkin's opinion is similarly admissible in this case.

Georgia-Pacific raises several other objections to Dr. Brodkin's testimony. It argues that Dr. Brodkin cannot estimate Mr. Quirin's dose of exposure to asbestos from joint compound. Dr. Brodkin concluded, based on Mr. Quirin's recollection and the testimony of two of Mr. Quirin's co-workers, that the exposure "occurred on a regular basis," but it was impossible for him to specify the number of instances on which exposure occurred or to estimate the dosage of the exposure. (Brodkin Dep. 69:14.) In cases of occupational or environmental exposure, however, "it is usually difficult, if not impossible, to quantify the amount of exposure." *Bombardiere v. Schlumberger Tech. Corp.*, 934 F. Supp. 2d 843, (N.D. W.Va. 2013) (quoting FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 187 (1994)). And "Illinois courts have not required a finding of the exact quantity of asbestos fibers [to which] a decedent was exposed." *Zickuhr v. Ericsson, Inc.*, 962 N.E.2d 974, 987 (Ill. App. Ct. 2011).

Georgia-Pacific further argues that Dr. Brodkin ignores differences in fiber potency. Chrysotile asbestos was the only asbestos fiber type used in Georgia-Pacific joint compound, the composition of which was 7% asbestos. Georgia-Pacific points to studies suggesting that exposure to low levels of chrysotile fibers—as opposed to amphibole fibers—does not increase the risk of mesothelioma, and that Dr. Brodkin did not acknowledge those studies.

But Dr. Brodkin did not ignore differences in asbestos fiber types. He acknowledged in his deposition that "amphibole fibers are several times more potent than chrysotile in causing mesothelioma," but opined that "certainly all the fiber types including chrysotile are potent carcinogens." (Brodkin Dep. 40:10-17.) Dr. Brodkin testified that his review of the epidemiological literature supported the conclusion that working with joint compound was

6

connected to a "significant risk" of developing mesothelioma. (*Id.* at 114:3-5.) He listed in his medical evaluation report the studies on which he relied in reaching that conclusion.

Georgia-Pacific's argument that chrysotile asbestos is not a significant cause of mesothelioma goes to the weight of Dr. Brodkin's conclusions, not to the reliability of his testimony. At trial, Georgia-Pacific may emphasize that studies exist contradicting Dr. Brodkin's conclusions, cross-examine Dr. Brodkin as to those studies, and argue that Quirin lacks evidence linking Mr. Quirin's disease to exposure to chrysotile asbestos used in Georgia-Pacific joint compound.

Georgia-Pacific argues, relatedly, that no epidemiological studies have found an elevated risk of mesothelioma among career drywall workers, and that the studies relied on by Dr. Brodkin linking exposure to chrysotile asbestos to mesothelioma are irrelevant as they all involved workers exposed to high doses of asbestos or to mixed chrysotile and amphibole fibers. Courts, however, have not generally required epidemiological studies to link a particular object to a particular disease. *See In re Asbestos Prods. Liab. Litig.*, 714 F. Supp. 2d 535, 544 (E.D. Pa. 2010) ("Epidemiology studies are not per se required, and may not be needed, if an expert offers a reliable causation opinion through the use of some other valid scientific methodology."). Again, gaps in the scientific record as to the relationship between drywall joint compound containing chrysotile asbestos and mesothelioma may be raised at trial, through cross-examination or by Georgia-Pacific's own expert.

Finally, Georgia-Pacific argues that regulatory materials may not be introduced into evidence through expert testimony. It contends that the positions of regulators, who are necessarily risk-averse, are not admissible to prove tort liability. Georgia-Pacific does not identify in its motion any specific testimony regarding regulatory standards Quirin might offer at

7

trial through Dr. Brodkin's testimony. It cites one page of Dr. Brodkin's deposition, in which he mentions a list of organizations, but the deposition testimony cited includes no detail about the pronouncements of those organizations. Furthermore, Dr. Brodkin's medical evaluation report includes a long list of scientific literature upon which he bases his opinion, not simply regulatory pronouncements. Thus, for purposes of this motion, the court cannot conclude that Quirin is using Dr. Brodkin to introduce inadmissible materials. Any specific objections to materials cited by Dr. Brodkin may be raised at trial.

### III. CONCLUSION

For the reasons set out above, Georgia-Pacific's motion to exclude Quirin's experts "each and every exposure" testimony is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 28, 2014