# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARILYN F. QUIRIN, Special Representative of the Estate of RONALD J. QUIRIN, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> LORILLARD TOBACCO COMPANY, et al., <br><br> Defendants. | Judge Joan B. Gottschall <br><br> Case No. 13 C 2633 |

## ORDER

The court resolves Lorillard Tobacco Company ("Lorillard") and Hollingsworth & Vose Company's (H&V) response [398] to the court's March 6, 2014 order as follows: Lorillard and H&V's experts may offer opinions relying upon the work of Dr. David N. Kendall at trial, but Lorillard and H&V may not elicit expert testimony that relies on the work of Ernest Fullam to prove that Kent cigarettes released asbestos fibers at or below background levels when the cigarettes were smoked.

## STATEMENT

Plaintiff Marilyn F. Quirin, special representative of the estate of Ronald J. Quirin ("Quirin"), brings this action against several manufacturers, including defendants Lorillard and H&V, for alleged violations of the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, and the Illinois Survival Act, 755 ILCS 5/27-6. Quirin's claims against Lorillard and H&V are based on the negligence theory that Mr. Quirin's mesothelioma was caused by his exposure to asbestos while smoking Kent cigarettes, which, during the 1950s, were manufactured with a "Micronite" filter that contained asbestos (hereinafter, "original Kents").

On August 1, 2013, Quirin filed a "Motion to Preclude Reliance by Defendants' Expert Witnesses on Scientifically Unreliable Testing Performed by Lorillard in the 1950s." (ECF No. 128.) The motion sought to exclude expert testimony that relied upon testing performed by Lorillard and several contractors in the 1950s in drawing conclusions regarding the release of asbestos fibers from original Kent cigarettes. On March 6, 2014, the court granted Quirin's motion in part and denied in part. (*See* ECF No. 246.)

Relevant to this order is the portion of the court's March 6, 2014 ruling that required Lorillard and H&V to move for a *Daubert* hearing if they wished to offer expert opinions relying on the work of Dr. Kendall and Fullam. On November 6, 2014, Lorillard and H&V submitted a description of the evidence they would offer at an evidentiary hearing in accordance with the court's instruction. Quirin subsequently filed a response requesting the exclusion of any testimony from Lorillard and H&V's expert witnesses that relies upon testing performed by Dr. Kendall or Fullam. At issue is not whether Dr. Kendall and Fullam are qualified, but whether their respective work satisfies the standard of admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 702 and 703. For the following reasons, the court will allow Lorillard and H&V's expert witnesses to rely upon the testing Dr. Kendall performed, but not upon the testing Fullam performed.

**I. LEGAL STANDARD**

Under Rule 702, an expert witness, "qualified . . . by knowledge, skill, experience, training, or education," may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable

principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

A trial judge must ensure "that an expert's testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed. R. Evid. 702). The court must prevent an expert from offering legal conclusions, as "experts cannot make those." *United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008).

"The reliability of the expert's principles and methods can be examined by looking at factors such as (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Schultz v. Akzo Novel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 593-94). The Seventh Circuit has explained that the judge's concern "is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion: the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). If the expert's principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**II.** ANALYSIS

A. Opinions Based on Work of Dr. Kendall

In its March 6, 2014 order, the court explained that the record was insufficiently developed to determine whether Lorillard and H&V's experts could rely upon testing performed by Dr. Kendall. The court explained that, "Although Dr. Kendall apparently produced several reports to Lorillard regarding his research analyzing the components of cigarette smoke, nothing in the record presented to the court indicates how Dr. Kendall's testing was performed." (ECF No. 246 at 6.) Since then, Lorillard and H&V have submitted an affidavit from Dr. Reinert analyzing the available evidence of Dr. Kendall's work, Dr. Kendall's testing reports, and trial testimony from Dr. Kendall in connection with the work he performed for Lorillard.

Having reviewed these materials, the court finds that Lorillard and H&V have sufficiently demonstrated the reliability of testing performed by Dr. Kendall. In particular, Dr. Reinert's affidavit identifies two reports—Report # 1978, dated February 27, 1954, and Report #1967, dated January 28, 1954—which Lorillard and H&V have produced to the court. The reports detail the methods Dr. Kendall employed, how he conducted his tests, and the data and results he obtained. In Dr. Reinert's opinion, Dr. Kendall's methods fell in line with accepted scientific practices in the 1950s and "are still used today to analyze the constituents of smoke." (Aff. of Kevin H. Reinert ¶15, ECF No. 398-1.) Dr. Reinert avers that he could replicate Dr. Kendall's analysis of the smoke for asbestos fibers, if provided "fresh original Kent cigarettes in the same condition as those smoked by Dr. Kendall in 1954. . . ." (*Id.* ¶ 16.) This expert testimony from Dr. Reinert will assist the jury in understanding Dr. Kendall's work, and any deviance from or defects in either Dr. Reinert's affidavit or Dr. Kendall's underlying reports can be tested through cross-examination. *See Daubert*, 509 U.S. at 596.

Quirin primarily challenges the sufficiency of the evidence Lorillard and H&V have supplied by calling into question whether Dr. Kendall used positive controls in testing.[1] Without positive controls, Quirin argues, it is impossible to determine whether Dr. Kendall's testing methodology was capable of detecting the presence of asbestos fibers in samples that, in fact, contained asbestos. But in making this argument, Quirin overlooks the controls that Dr. Kendall did apply. Dr. Reinert observed that Dr. Kendall used Old Gold cigarettes as a non-asbestos control, Cab-O-Sil silica as a silica control, and asbestos fibers from original Kent cigarette filters as an asbestos control. Nothing prevents Quirin from contesting the adequacy and functionality of these controls at trial. *See Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 810 (7th Cir. 2013) ("Assuming a rational connection between the data and the opinion—as there was here—an expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility.").

### B.  Opinions Based on Work of Ernest Fullam

The evidence Lorillard and H&V previously tendered to substantiate Dr. Fullam's testing consisted of two letters from Dr. Parmele.[2] The court explained in its March 6, 2014 order that the letters, in and of themselves, were insufficient to support the admissibility of expert testimony relying upon Fullam's work. In particular, the letters did not speak to "how [ ] Fullam's work reliably supports [Lorillard and H&V's experts'] conclusions that the tests showed the presence of asbestos fibers in the smoke at or below background levels." (ECF No. 246 at 10.) The court commented that the "other documents apparently in existence relating to

---

[1] Quirin also argues that "the only 'new' document provided by Lorillard and H&V is the trial transcript of Dr. Kendall," but this statement is inaccurate. (Plaintiff's Reply Mem. at 5, ECF No. 5.) Lorillard and H&V submitted not only Dr. Kendall's trial testimony, but several written reports memorializing the testing Dr. Kendall conducted.

[2] The court's March 6, 2014 order contains a more thorough description of these letters. (*See* ECF No. 246.)

[ ] Fullam's work were provided to the parties' experts," but not to the court. (*Id.*) Lacking this proof, the court found that Lorillard and H&V had failed to "demonstrate by a preponderance of the evidence that expert testimony based on [ ] Fullam's work satisfies the *Daubert* standard." (*Id.*) However, the court invited Lorillard and H&V to move the court for a hearing if they could marshal sufficient evidence to make a *Daubert* showing.

Despite requesting a *Daubert* hearing, Lorillard and H&V have provided the court with no new information that warrants allowing their experts to offer opinions relying upon Fullam's work. Lorillard and H&V acknowledge that the only evidence of Fullam's work is the letters from Dr. Parmele. As a consequence, two key aspects of Fullam's testing remain a mystery: (1) how Lorillard generated the "smoke solutions" that it provided to Fullam to test for the presence of asbestos; and (2) the methodology of the "short cut technique" that Dr. Parmele proposed using. Unable to explain these unknown variables, Lorillard and H&V's proof falls short of what *Daubert* and Rule 702 demand. *See In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999) (where "the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded").

Lorillard and H&V argue that testimony from Fullam's assistant, Douglas Hallgren, adequately fleshes out the testing methodology Fullam employed. The court disagrees. Hallgren testified that he and Fullam did not follow any written protocol in their work for Lorillard. During their testing, they did not measure either the volume of smoke generated or the rate at which they smoked the cigarettes, "as some of the fancy machines do today." (*See* Def.'s Ex. B at 279, ECF No. 398-1; Pl.'s Ex. F at 35:13-36:14, ECF No. 404-5.) Instead, Fullam and Hallgren implemented their own "homemade procedure," *id.*, which may have included a "short

cut technique" that not even Dr. Reinert can explain.[3] In fact, parts of Hallgren's testimony belie Dr. Reinert's conclusion that Fullam's work was scientifically reliable. Hallgren stated that he and Fullam *manually* regulated the duration of a puff by "pinching the hose;" Dr. Reinert, on the other hand, suggests in his affidavit that Fullam and Hallgren abided by "Lorillard's standard practice (and that of the cigarette industry) in the 1950s to use mechanical smoking equipment." (*Compare* Pl.'s Ex. E at 53:23-25, ECF No. 404-5 *with* Reinert Aff. ¶ 19, ECF No. 398-1.) The court credits Hallgren's firsthand account of what happened.

Lorillard and H&V also assert that Dr. Reinert, by virtue of his own experience and expertise, can fill in the informational gaps in Dr. Parmele's letters regarding Fullam's testing. Lorillard and H&V insist that Dr. Reinert should be trusted with this responsibility, since he reviewed all evidence of Fullam's work and applied a so-called "weight of the evidence" approach before drawing any conclusions. Dr. Reinert explains that this scientific method of reviewing another individual's work "involves (1) the collection of all available information; (2) review and evaluation of the information for appropriateness and relevancy; (3) the synthesis of scientifically defensible information; and (4) the determination of an appropriate and relevant conclusion." (Defs.' Reply at 3, ECF No. 409.)

Essentially, Lorillard and H&V appear to be asking the court to defer to Dr. Reinert because he methodically reviewed all evidence of Fullam's work using the "weight of the evidence" method. But Lorillard and H&V offer no law supporting the court's delegation of its gatekeeping duties. It is the court's task to determine "both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Bielskis*, 663 F.3d at 894. Dr.

---

[3] *See* Pl.'s Ex. D, ECF No. 404-4 *and* Pl.'s Ex. B at 77:9-16, ECF No. 404-2 ("Q. All right. If you look down there, Dr. Reinert, where reference is made to a shortcut technique that had been proposed by Dr. Parmele, do you see that? A. Yes, sir. I do. Q. Obviously there's no way to tell what the shortcut technique was; correct? A. That's correct.").

Reinert's role is to "help the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed. R. Evid. 702. Although "an expert is permitted wide latitude to offer opinions," *Daubert*, 509 U.S. at 592, the court will not put the fox in charge of the hen house and allow Dr. Reinert to decide whether his own testimony is admissible. That decision falls solely within the court's purview. And in this instance, Lorillard and H&V may not introduce testimony from Dr. Reinert that relies on Fullam's work because there is no evidence such testimony is "the product of reliable principles and methods." Fed. R. Evid. 702.

Finally, Lorillard and H&V contend that it would be unfair to allow Quirin's expert to opine on Fullam's work while barring their experts from offering similar testimony. But there is a distinction between the testimony Quirin's expert and Lorillard and H&V's experts would offer. Lorillard and H&V's experts would testify relying upon the testing that Fullam conducted and the results thereof to show that Kent cigarettes released asbestos fibers at or below background levels when the cigarettes were smoked. By contrast, Quirin's expert would testify "that *insufficient* documentation exists to demonstrate the scientific validity of" Fullam's testing.[4] (*See* ECF No. 246 at 14) (emphasis added.) This distinction matters because it runs to the purpose motivating each side to introduce expert testimony regarding Fullam's work. Now that Lorillard and H&V experts cannot rely upon Fullam's work, there is no reason for Quirin to question the evidence of that work before the jury. *See* Fed. Rule Evid. 401.

---

[4] A more apt comparison would be if the court allowed Quirin's expert to rely on testing by Fullam to prove her case-in-chief. Nothing prevented Lorillard and H&V from moving *in limine* to bar Quirin's expert from offensively opining on Fullam's work.

8

**III.** CONCLUSION

Lorillard and H&V's experts may offer opinions relying upon the work of Dr. David N. Kendall at trial, but Lorillard and H&V may not elicit expert testimony that relies on the work of Ernest Fullam to prove that Kent cigarettes released asbestos fibers at or below background levels when the cigarettes were smoked.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2015