**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARILYN F. QUIRIN, Special Representative of the Estate of RONALD J. QUIRIN, Deceased, | ) | |
| Plaintiff, | ) | Judge Joan B. Gottschall |
| v. | ) | Case No. 13 C 2633 |
| LORILLARD TOBACCO COMPANY, et al., | ) | |
| Defendants. | ) | |

**ORDER**

Crane Co.'s motion to reconsider [266] is denied.

**STATEMENT**

## I. BACKGROUND

Plaintiff Marilyn F. Quirin, special representative of the estate of Ronald J. Quirin, brings this action against several manufacturers, including defendant Crane Co., for alleged violations of the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.*, and the Illinois Survival Act, 755 ILCS 5/27-6. Plaintiff's claims against Crane Co. are based on the negligence theory that Mr. Quirin developed and died from mesothelioma substantially caused by his exposure to asbestos-containing materials while working with Crane Co. valves during his naval service. On August 1, 2013, Crane Co. moved for summary judgment to dismiss both claims with prejudice. The court denied Crane Co.'s motion on February 14, 2014.

Now before the court is Crane Co.'s motion to renew its motion for summary judgment or, in the alternative, for reconsideration of the court's February 14, 2014 opinion denying its motion for summary judgment ("motion to reconsider").

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), a court may reconsider its interlocutory orders "at any time before the entry of judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule 54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.") (quotation marks omitted). But a motion to reconsider is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier. *See Shilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). A motion to reconsider allows a party only to bring manifest errors of fact or law to the court's attention or to present newly discovered evidence. *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## **III.** DISCUSSION

Crane Co. argues that the court committed manifest error of fact in denying Crane's motion for summary judgment. According to Crane Co., there are two factual issues that the court misunderstood: (a) "whether asbestos-containing sealing materials were 'essential to the proper functioning of Crane Co.'s equipment,'" and (b) "whether Plaintiff can sufficiently establish that Mr. Quirin encountered an asbestos-containing sealing product supplied by Crane Co. . . ." (Crane Co. Reply in Support of Mot. to Reconsider at 8, ECF No. 275 (quoting Feb. 14, 2014 Mem. Opinion and Order at 14.)) The court addresses each issue in turn.

### **A. The court did not err in finding that a reasonable jury could conclude that Crane Co. had a duty to warn about the hazards of asbestos exposure resulting from work on its valves.**

According to Crane Co., the court held in its February 14, 2014 order that "Crane Co. could be held responsible for the asbestos-containing materials to which Mr. Quirin was exposed, if 'the asbestos-containing material was essential to the proper functioning of the defendant's product.'" (Crane Co.'s Mem. in Support of Mot. at 3, ECF No. 266 (quoting Order at 14.)) Crane Co. predicates this basis for its motion to reconsider on what it believes are several undisputed facts that show asbestos was not essential to the use of a Crane Co. valve.

Before addressing those purportedly undisputed facts, the court notes that Crane Co. misstates the court's prior holding. The court did not rule that a duty of care arises only if asbestos was essential to the proper functioning of a defendant's product. Rather, the court posited that a duty may attach (1) "where the defendant manufactured a product that, by necessity, contained asbestos components," (2) "where the asbestos-containing material was essential to the proper functioning of the defendant's product," *or* (3) "where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else."[1] (Order at 14-15.)

Crane Co. ignores the third ground that could give rise to a duty to warn. Regardless of whether asbestos was essential to the proper functioning of Crane Co.'s valves, or necessary for another reason, the court determined that the record contained sufficient evidence from which "a jury could conclude that it was not just foreseeable, but inevitable, that the product would subject those working with it to the possible hazards of asbestos exposure." (*Id.* at 17.) As the court

[1] The first and second bases that support a duty to warn appear indistinguishable. But there may be occasions where a manufacturer sells a product that comes with asbestos out of necessity, and other occasions where a third-party supplies an asbestos-containing material to ensure the proper functioning of the same product in a certain application after sale. In the latter scenario, the manufacturer's knowledge that the product would be used in such an application in which asbestos was essential to the product's proper functioning could give rise to a duty to warn. *See Chicago v. Gen. Elec. Co.*, No. Civ. A 03-5126, 2004 WL 2250990, at *6 (E.D. Pa. 2004) (applying Pennsylvania law to find "a genuine issue of material fact as to whether . . . GE could reasonably foresee that its turbines would be combined with asbestos-containing insulation, which together constituted a defective product, absent appropriate warnings of the dangers of asbestos").

explained, Plaintiff presented evidence showing that Crane Co. knew that "its valves would be used in high heat applications." (*Id.* at 16.) The record also contained evidence showing that "[a]sbestos was used in gaskets and packing because of its resistance to heat," which is "why Crane Co. valves were supplied with asbestos-containing materials in the first place." (*Id.*) Plaintiff's experts testified consistently with this evidence. They opined that the gasket and packing material in the hot steam-powered applications likely contained asbestos. (Pl.'s Statement of Additional Material Facts ¶ 10, ECF No. 166.) Thus, regardless of whether asbestos was essential to the proper functioning of Crane Co. valves, the court's ruling stands because whether Mr. Quirin was inevitably exposed to asbestos by working with Crane Co. valves remains a disputed issue of fact.

Crane Co. attempts to overcome the reasoning in the court's order by repeating arguments that were already rejected and by raising new arguments that Crane Co. could have made in its motion for summary judgment. First, Crane Co. argues that non-asbestos containing gaskets and packing were available for the Navy to use with Crane Co. valves. Crane Co. references testimony from Charles Blake, a purported industrial hygiene expert whom Crane Co. did not designate as an expert in this matter. On September 8, 2013, Blake offered the following testimony in the Court of Common Pleas of Richland County, South Carolina in *Garvin v. AGCO Corp.*, No. 2012-CP-40-6675:

> Q: And regardless of whether it was air, water, steam -- chemical or any other type of substance going through the systems, would -- is there any type of system where asbestos could be the only thing that could have been used for gasket and packing?
>
> A: No, I've already mentioned that. The bonnet gaskets, in five out of seven of those valves, were metal. What you have is anneal is the actual term, but it's soft, soft metal, which is going to form. There's also some - - there's some bent in way that will cause the seal, but it's metal nonetheless, solid metal.

Q: So to be clear, is there anything about a Crane Co. valve that would have required asbestos packing or gaskets to function or insulation?

A: No, the valve will function without any asbestos involved at all. There -- are instances where asbestos may be convenient, but a valve can be bought and used in the process without any asbestos-containing materials and those bonnet gaskets are a good example in this case.

Q: So even if we took a valve that, say from the 1960's or 70's what used asbestos-containing gaskets or packing, could you use that same valve today?

A: Yes, with the absence - - I mean the implication here is there's no asbestos involved and yes, you can use it with nonasbestos packing or bonnet gaskets.

(Def.'s Mot. Ex. C at 65:16-66:16, ECF No. 266.)

Crane Co.'s reliance on testimony from a newly introduced expert is problematic. Crane Co. did not disclose or designate Blake as an expert witness. Nor does Crane Co. contend that Blake's testimony is "newly discovered evidence," given that his deposition took place in September 2013. Crane Co. has no excuse for seeking to introduce an undisclosed expert's opinion at this time. Moreover, Plaintiff would be severely prejudiced if the court considered Blake's testimony in reevaluating Crane Co.'s motion for summary judgment. Plaintiff has had no opportunity to conduct discovery into Blake's qualifications, opinions, or bases therefor. Nor was Plaintiff a party in *Garvin* and or represented by counsel at the deposition.

And, in any event, nothing in Blake's testimony compels the court to reconsider its prior ruling. Crane Co. does not assert that Blake testified in connection with the valves Mr. Quirin repaired and replaced on the *Tolovana*. And Blake himself testified that "there are instances where [asbestos-containing materials] may be convenient" for use with Crane Co. valves. (*Id.* ) This testimony does not necessarily contradict the evidence Plaintiff presented in opposing summary judgment. The record showed that Crane Co. used asbestos in gaskets and packing for the original valves it supplied. Whether out of convenience, necessity, or cost-effectiveness, the

court still holds that a reasonable jury could find that the Navy would have inevitably replaced its original valves, which contained asbestos in the accompanying gaskets and packing, with new Crane Co. valves that also came with asbestos-containing gaskets and packing.

In addition to presenting new expert testimony, Crane Co. raises other new challenges to the opinions Plaintiff's experts offered. Crane Co. asserts that Plaintiff's experts, who opined on the likelihood that the Navy used asbestos-containing gaskets and packing with Crane Co. valves on the *Tolovana*, lacked the expertise to testify as to valve design and operation. Although Crane Co. maintains that it is not "attempting to raise a '*Daubert*' challenge to [Plaintiff's expert witnesses]," that is exactly what Crane Co. is trying to do. Pursuant to the court's May 14, 2013 order, the deadline for *Daubert* motions was August 1, 2013. On two occasions, Crane Co. asked to join its co-defendants' *Daubert* motions. (*See* ECF Nos. 130, 233.) But none of the co-defendants' *Daubert* motions addressed the qualifications of Plaintiff's experts to opine on subject matter related to Crane Co. products. Crane Co. could have separately filed a timely *Daubert* motion on its own behalf. Or, Crane Co. could have sought leave to file a *Daubert* motion after the August 1, 2013 deadline had passed; Crane Co. still could, but that is not what it has done. Crane Co. now presents a backdoor *Daubert* challenge under the guise of a motion to reconsider. Crane Co. fails to justify why the court should consider Crane Co.'s objection to testimony from Plaintiff's expert, when Crane Co. has not made a *Daubert* challenge. *See, e.g., Waitek v. Dalkon Shield Claimants Trust*, 934 F. Supp. 1068, 1081-82 (N.D. Iowa 1996) (failure to make a timely objection to the admission of expert testimony waives the objection) (canvassing federal case law).

**B. The court did not err in finding that there is sufficient circumstantial evidence of exposure to Crane Co. valves.**

Crane Co. contests the court's finding that sufficient circumstantial evidence of exposure to Crane Co. products exists to avoid summary judgment. First, Crane Co. argues that it can show that it was not an approved supplier of gasket and packing materials to the Navy. Crane Co. admits that this argument is new, but claims that the court nevertheless should consider it because whether "Mr. Quirin was exposed to asbestos-containing gasket or products supplied by Crane Co." was an "issue not previously . . . in dispute." (Mot. 2.) Crane Co. cannot be serious. The Fifth Amended Complaint, filed April 26, 2013, explicitly alleges that during the course of Mr. Quirin's naval service he was exposed to asbestos-containing products, including valves, gaskets, and packing, which Crane Co. "manufactured, sold, distributed, supplied, and/or installed . . ." (ECF No. 41 ¶ 11.) Crane Co. contested the validity of this allegation in its motion for summary judgment by stating that "there is no evidence that Crane Co. supplied any [ ] replacement gaskets or packing, or any other asbestos-containing material with which Mr. Quirin may have had contact." (ECF No. 96 at 3.) Crane Co. cannot use a motion to reconsider as a platform to present new points it could have made in its initial motion. If Crane Co. had believed its status as a supplier to the Navy was relevant, then Crane Co. should have raised and supported that fact in its Local Rule 56.1 statement and motion for summary judgment.[2]

Additionally, the court's order did not turn on whether Crane Co. was an approved supplier of gaskets and packing. Assuming *arguendo* that Crane Co. did not directly supply replacement parts to the Navy, the court found sufficient evidence for a jury to infer that any third-party "replacement parts would have been substantially identical to the [asbestos-containing] components originally supplied by Crane Co." (Order 16.) This inference supports imposing a duty to warn on Crane Co. because "[r]egardless of who is ultimately found to have

[2] Moreover, Crane Co. waited until its reply brief to identify the Declaration of Thomas McCaffery as the evidence it would offer to show it was not an approved supplier of replacement gaskets or packing materials to the Navy. By waiting until its reply, Crane Co. deprived Plaintiff the opportunity to respond to this evidence.

installed the [asbestos-containing product], if the jury finds that [Crane Co.'s] failure to warn about the [asbestos-containing product] gave rise to [Mr. Quirin's injury] was not reasonable under the circumstances, then [Crane Co.] may be held liable." *See Salisbury v. Asbestos Corp. LTD.*, No 12-60168-ER, 2014 U.S. Dist. LEXIS 11295, at *20 (E.D. Pa. Jan. 29, 2014).

Finally, Crane Co. argues that it is entitled to summary judgment because Plaintiff cannot prove whether any of the "new" valves Mr. Quirin handled were, indeed, Crane Co. valves. Relying on testimony from Mr. Quirin, Crane Co. notes that he did not specifically testify that he replaced Crane Co. valves with new Crane Co. valves. But the testimony that follows the passage Crane Co. cites indicates that the "main" valves Mr. Quirin "removed," repaired," and "work[ed] on" were Crane Co. valves. (ECF No. 167-1 at 38:1-14.) Thus, whether Mr. Quirin was exposed to asbestos while replacing old Crane Co. valves with new Crane Co. valves is a disputed issue of material fact.

## IV. CONCLUSION

Crane Co.'s motion to reconsider [266] is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2015