# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARILYN F. QUIRIN, Special )
Representative of the Estate of )
RONALD J. QUIRIN, Deceased, )
                 )
        Plaintiff, )
                 )     Judge Joan B. Gottschall
        v. )
                 )     No. 13 CV 2633
LORILLARD TOBACCO COMPANY )
et al., )
                 )
        Defendants. )

## MEMORANDUM OPINION & ORDER

Plaintiff Marilyn F. Quirin ("Plaintiff"), special representative of the estate of Ronald J. Quirin ("Mr. Quirin"), has sued defendants Lorillard Tobacco Company ("Lorillard"), Hollingsworth & Vose Company ("H&V"), and Georgia-Pacific, LLC ("Georgia-Pacific") (collectively, "Defendants") on a negligence theory, alleging that Mr. Quirin developed and died from mesothelioma substantially caused by his exposure to asbestos-containing materials while smoking Kent cigarettes and working with asbestos-containing joint compound manufactured, sold, distributed, or supplied by Georgia-Pacific.[1]

Now before the court is Lorillard, H&V, and Georgia-Pacific's motion for summary judgment on Plaintiff's claim for damages for loss of consortium under the Illinois Wrongful Death Act, 740 ILCS 180/1-*et seq.* ("IWDA"). Lorillard, H&V, and Georgia-Pacific argue that Plaintiff cannot establish that Mr. Quirin was exposed to each defendant's asbestos-containing products after his marriage to Plaintiff on February 18,

---

[1] Georgia-Pacific is sued both individually and as successor-in-interest to Bestwall Gypsum Company. (Fifth Amended Compl. at 3, ECF No. 41.)

1977, and thus that Plaintiff is not entitled to damages for loss of consortium under the IWDA. For the reasons discussed below, Lorillard and H&V's motion for summary judgment on Plaintiff's claims for damages for loss of consortium under the IWDA is granted. Georgia-Pacific's motion on the same issue is denied.

## I.BACKGROUND

Mr. Quirin was diagnosed with mesothelioma on or about December 27, 2011. In 2012, Mr. Quirin and his wife, Plaintiff, filed a complaint against numerous defendants in the Circuit Court of Cook County, Illinois, alleging claims for injuries caused by asbestos exposures. Mr. Quirin passed away on March 31, 2013, and Plaintiff was appointed his executor. The case was removed to federal court on diversity grounds in April 2013, and Plaintiff filed her Fifth Amended Complaint on April 26, 2013.

The defendants moving for summary judgment on the issue of claims for damages for loss of consortium ("consortium damages") are Lorillard, H&V, and Georgia-Pacific. For purposes of this motion, the court takes the following facts from Lorillard and H&V's Statements of Facts ("SOFs") to the extent that they are supported by admissible evidence and relevant to issues raised in the motion. Plaintiff failed to file a response to Defendants' statement. Pursuant to Rule 56.1(b)(3), the facts contained in Defendants' statement are thus properly admitted. L.R. 56.1(b)(3). Georgia-Pacific did not submit a 56.1 statement. Facts regarding Georgia-Pacific's products are drawn from the amended complaint [41] and Georgia-Pacific's reply brief [400]. [2]

From March 1952 until May 1956, Lorillard's business predecessor, P. Lorillard Tobacco Company, manufactured Kent cigarettes with a filter made of cellulose acetate,

---

[2] Georgia-Pacific improperly raises facts via a reply brief [345]. The court considers them to the extent they are supported by admissible evidence and relevant to issues raised in the motion.

cotton, crepe paper, and crocidolite asbestos (hereinafter, "original Kents"). From March 1952 until May 1956, H&V's predecessor, H&V Specialties Co., Inc., manufactured asbestos-containing bulk filter media for P. Lorillard Tobacco Company. After May 1956, Kent cigarettes were no longer manufactured with a filter containing asbestos. Mr. Quirin began smoking Kent cigarettes shortly after joining the Navy in 1953 and continued to smoke them until the early 1960s.

Mr. Quirin was also allegedly exposed to an asbestos-containing product that Georgia-Pacific produced in the course of his employment with Illinois Bell. Mr. Quirin worked at Illinois Bell from approximately 1957 to 1986 as an installer and supervisor. During the course of Mr. Quirin's employment, Mr. Quirin was allegedly exposed to and inhaled asbestos fibers from Georgia-Pacific's products. In particular, Plaintiff alleges that Mr. Quirin's asbestos exposure resulted from fibers emanating from joint compound, a substance used in construction. According to Georgia-Pacific, it manufactured two types of joint compound. The first, a "dry-mix joint compound," consisted of a powder that was mixed with water before use. The second compound, Ready-Mix, was a premixed joint compound that came in liquid form. Georgia-Pacific admits that Ready-Mix did contain a "small amount of asbestos into 1977." (Def.'s Reply at 1, ECF No. 400.) Ready-Mix joint compound was used on job sites that Mr. Quirin visited and worked at during his employment with Illinois Bell.

Mr. Quirin married Plaintiff on February 18, 1977 and remained married until his death from mesothelioma.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. ANALYSIS

### 1. Lorillard and H&V

Lorillard and H&V argue that they are entitled to summary judgment on Plaintiff's claim under the IWDA for consortium damages because Mr. Quirin was unmarried at the time he was exposed to asbestos-containing Kent cigarettes. Plaintiff argues that because mesothelioma is a "continuous exposure" disease, Mr. Quirin's "thirty-four years of exposure to asbestos . . . partially overlapped with the marriage to [Plaintiff]." (Pl.'s Response at 7, ECF No. 380.)

Although the Illinois Supreme Court has not addressed whether a spouse is entitled to loss of consortium damages for a pre-marital injury to his or her spouse, the Illinois appellate courts have spoken on this issue. The court must "give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state

would decide the case differently from the decision of the intermediate appellate court."
*Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (discussing how federal courts should ascertain substantive state law when sitting in diversity). The First District has held that "[t]he post-marital discovery of a pre-marital injury cannot create a cause of action for loss of consortium where none existed in the first place." *Monroe v. Trinity Hospital Advocate*, 345 App. 3d 896, 803 N.E.2d 1002, 1005 (1st Dist. 2003).

In fact, Illinois appellate courts have specifically considered whether a spouse is entitled to damages for his or her spouse's pre-marital exposure to asbestos. *Gillenwater v. Honeywell Intern.*, 2013 IL App 120929, 996 N.E.2d. 1179, 1208 (4th Dist. 2013). In *Gillenwater*, a pipefitter's wife brought a claim for loss of consortium after her husband developed mesothelioma from asbestos exposure in the 1970s. There was no evidence that the plaintiff's husband was exposed to asbestos after the 1970s, and he did not marry the plaintiff until 1987. *Id*. at 1207. Citing *Monroe*, the court held that because there was "no evidence [the pipefitter] was exposed to asbestos after marrying," the defendants were entitled to judgment as a matter of law. *Id*. The court explained that a "manufacturer owes no duty to [a person's] future spouse" when the manufacturer wrongfully exposes a person, without warning, to asbestos-containing products. *Id*.

The Northern District of Illinois recently applied this holding from *Gillenwater* in a federal case. *See Smith v. Crane Co.*, 2014 WL 3509731, at *2 (N.D. Ill. July 14, 2014). In *Smith*, Kenneth Smith ("Mr. Smith") served in the United States Navy from 1964 to 1968. *Id*. at *1. Mr. Smith and his wife alleged that he was exposed to asbestos-containing products manufactured by Crane Co. during his time in the Navy. *Id*. In 2013, Mr. Smith was diagnosed with malignant mesothelioma, and his wife brought a claim for

loss of consortium due to Mr. Smith's development of mesothelioma. *Id*. Crane moved to dismiss the loss of consortium claim, and the district court granted the motion. *Id*. at *2. In granting the motion to dismiss, the court relied on the logic of *Monroe* and *Gillenwater* and summed up the approach to the issue of whether any duty is owed to a spouse when a pre-marital injury with post-marital effects occurs:

> [F]or a breach of duty to occur, the couple must be married at the time the alleged injury transpired. *Monroe*, 345 Ill.App.3d at 899. If a marital relationship does not exist at the time of the alleged injury, a defendant owes no duty to the spouse alleging loss of consortium. Here, [the plaintiffs] were not married at the time of [Mr. Smith's] alleged exposure to asbestos. *Since no marital relationship existed at the time of exposure, defendants owed no duty to [Mrs. Smith]*.

*Id*. at *2 (emphasis added) (citations omitted).

Here, it is undisputed that: Lorillard and H&V stopped manufacturing cigarettes with an asbestos-containing filter in 1956; Mr. Quirin stopped smoking Kent cigarettes in the early 1960s; and Mr. Quirin married his wife in 1977. Since Mr. Quirin's last possible exposure to Kent cigarettes containing asbestos occurred well before his marriage, Lorillard and H&V are entitled to summary judgment on the issue of claims for damages for loss of consortium as against the named plaintiff, Marilyn Quirin.

Despite the clear holding of Illinois courts on this issue, Plaintiff attempts to argue that the cases cited above are neither "new" nor "relevant." She argues that these cases do not entitle Lorillard and H&V to summary judgment because "[Mr. Quirin's] injury . . . was not a single traumatic event that took place before the Quirins' wedding, but approximately thirty-four years of exposure to asbestos that partially overlapped with his marriage to [Quirin]." (Pl.'s Response at 7, ECF No. 380.)

Plaintiff's argument is grounded on the premise that asbestos exposures should be considered a "single continuous occurrence." (*Id*. at 8.) Plaintiff relies on two cases from the Second District of Illinois for this proposition. In *Missouri Pacific Railroad Co. v. Int'l Insurance Co.*, 288 Ill.App.3d 69, 679 N.E.2d 801 (2nd Dist. 1997), the court held that "the plaintiffs' lengthy asbestos exposures should be considered 'a single continuous occurrence'" for purposes of determining whether an injury 'occurred' during an insurance policy's coverage period. *Missouri Pacific* Railroad, 679 N.E.2d at 807. Plaintiff also argues that *Outbound Marine Corp. v. Liberty Mut. Ins. Co.*, 283 Ill. App. 3d 630, 670 N.E.2d 740 (2nd Dist. 1996) supports the "single continuous occurrence" theory. In *Outbound*, the Second District "upheld a trial court's finding that the defendant's twenty-three year practice of contaminating Waukegan Harbor 'amounted to a single continuing occurrence." *Outbound Marine Corp.* 670 N.E.2d at 748.

Plaintiff's reliance on these two cases is misplaced. In both cases, the court examined exposure to a harmful product in the context of evaluating insurance claims. Liability in both cases turned on how the insurance policies defined the term "occurrence," which set forth guidelines to mark the period of time during which the insured was exposed to a harmful product. In *Missouri Pacific Railroad*, the insurance policy defined "occurrence" as:

> 'Occurrence' means (a) an accident, or (b) a *continuous or repeated exposure to conditions which resulted in personal injury* or property damage . . . if such accident or such personal injury or property damage occurs while this policy is in place.

*Missouri Pacific R.R.*, 679 N.E.2d at 803 (emphasis added). Similarly, in *Outbound*, the insurance policy provided:

The word 'occurrence' whenever used herein, means one happening or *series of happenings* arising out of or resulting from one event taking place during the term of this policy.

*Outbound*, 670 N.E.2d. at 746 (emphasis added).

These cases demonstrate that the Second District was not, as Plaintiff describes it, embracing the concept of exposure as one continuous injury. Rather, the court looked to the agreed-upon-terms of insurance policies to decide what "occurrence" encompassed. These cases are thus distinguishable from the present case. The Second District did not create a new theory of liability based on the theory of "continuous exposure;" instead it followed the letter of agreed-upon-policies. Plaintiff attempts to transform these narrow holdings into a broader theory of liability, and the case law simply does not support this. For these reasons, the court holds that Lorillard and H&V are entitled to summary judgment on the issue of claims for damages for loss of consortium as against the named plaintiff, Marilyn Quirin.

### 2. Georgia-Pacific

Georgia-Pacific moved to join Lorillard and H&V's motion for summary judgment on consortium damages on October 13, 2014. The court granted the motion on October 20, 2014. In Georgia-Pacific's motion, it stated that the "substantive arguments set forth in [Lorillard and H&V's] Motion for Summary Judgment apply equally to Georgia-Pacific because Plaintiff has produced no evidence that Mr. Quirin was exposed to any Georgia-Pacific product after he married Marylin (sic) Quirin on February 18, 1977." (Def. Georgia-Pacific LLC's Motion to Join Def.'s Motion at 1, ECF No. 345.) Georgia-Pacific requested an order allowing Georgia-Pacific "to adopt the arguments set forth in" Lorrilard and H&V's motion for summary judgment. A few weeks later,

Georgia-Pacific filed a "Reply in Support of Motion for Summary Judgment." (*See* ECF No. 400.) Significantly, Georgia-Pacific did not file an initial memorandum in support of its motion for summary judgment. It also failed to submit a Statement of Material Facts ("56.1 Statements"). Thus, all of the information Georgia-Pacific provides comes by way of its reply in support of Lorillard and H&V's motion.

There are several procedural defects in the manner Georgia-Pacific presented its arguments to support entering summary judgment in its favor. First, arguments "raised for the first time in a reply brief are waived." *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F.Supp.2d 727, 740 (citations omitted). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Id*. (citation omitted). Here, Georgia-Pacific failed to file an opening brief in support of its motion for summary judgment. As a result, all arguments raised in its reply brief were *ipso facto* arguments raised for the first time. And although Georgia-Pacific attempted to incorporate by reference the arguments raised by Lorillard and H&V in their memorandum in support of summary judgment, this tactic is insufficient because Lorillard and H&V did not present any facts that are germane to Georgia-Pacific. While Georgia-Pacific may have wished to adopt the same *legal* arguments as Lorillard and H&V, nothing in Lorillard and H&V's opening brief addresses Mr. Quirin's exposure to Georgia-Pacific's products. Because Georgia-Pacific's fact-based arguments are raised for the first time in a reply, rather than an opening brief, Georgia-Pacific's arguments are waived. With no other arguments on which to base its conclusion, the court has no choice but to deny summary judgment as to

Georgia-Pacific on the issue of claims for damages for loss of consortium under the IWDA.

Second, Local Rule 56.1 requires parties to submit statements of undisputed material facts when a party files for summary judgment. L.R. 56.1(b)(3). Georgia-Pacific simply failed to follow the correct procedure in this instance.

Third, even if the court were to consider the factual assertions made by Georgia-Pacific in its reply brief, the court would still deny summary judgment because the record shows there is a genuine issue of material fact regarding when Mr. Quirin was exposed to Georgia-Pacific's product. Georgia-Pacific argues that "[w]hile [Georgia-Pacific] Ready-Mix did contain a small amount of asbestos into 1977, there is no evidence that Mr. Quirin was exposed to Georgia-Pacific's premixed joint compound Ready-Mix." (Def. Georgia-Pacific's Reply at 1-2, ECF No. 400.) To support its argument, Georgia-Pacific quotes heavily from depositions. The court's review of these depositions, however, reveals that, construing all facts in favor of Plaintiff, the testimony shows that witnesses cannot testify with absolute certainty whether they observed Georgia-Pacific's products at jobsites. This is not the same thing as being certain that Georgia-Pacific's products were *not* at the jobsites. For example, Georgia-Pacific quotes the following excerpt of a deposition from Mr. Quirin to argue that there is no evidence of asbestos-containing Georgia-Pacific products on Mr. Quirin's jobsites from 1977 onward:

> ATTY: Do you recall the brand name, trade name, or manufacturer's name of that [joint compound] premix at the . . . site?
>
> Quirin: The two that you see most of all in that particular area was Georgia-Pacific and – and U.S. Gypsum.
>
> ATTY: Can you say whether it was one or the other?

Quirin: No, I can't.

(*Id*. at 2.) At most, Quirin's testimony creates a genuine issue of material fact as to whether Quirin was exposed to asbestos-containing Georgia-Pacific products in 1977, the same year he married Plaintiff. The fact-finder, not the court, should resolve this factual question.

## I.CONCLUSION

Lorillard and H&V's motion for summary judgment [339] is granted in part and denied in part. The motion is granted as it applies to Lorillard and H&V; Plaintiff's claim for damages for loss of consortium under the Illinois Wrongful Death Act is dismissed as to these two defendants. However, the motion is denied as it applies to Georgia-Pacific, LLC.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:  January 8, 2015